## INTERMILL v. NASH.

No. 5915. Decided January 13, 1938. (75 P. [2d] 157.)

Rehearing Denied February 28, 1938.

C. E. *Norton*, of Salt Lake City, for appellant.

*Jesse R. S. Budge*, of Salt Lake City, of respondent.

LARSON, Justice.

There is but one question presented on this appeal from a judgment of the district court of Salt Lake county. Did the plaintiff, by her answer to defendant's counterclaim, make a direct or a collateral attack upon a judgment of the court in another cause? Plaintiff contends the attack was direct, while the court held it was collateral. The facts are as follows: Plaintiff instituted this suit against defendant to quiet her title to certain real estate in Salt Lake City. The complaint merely alleged ownership in plaintiff; that defendant claimed some interest therein, but without right, and prayed for a decree quieting plaintiff's title. Defendant answered denying plaintiff's allegations; and in a counterclaim alleged title in herself; that plaintiff claimed an adverse interest, but without right, and prayed that her title be quieted. The complaint and the counterclaim were each in the shortest, briefest form possible. To defendant's counterclaims, plaintiff filed an answer, designated an amended reply, wherein she alleged: That in 1910, she bought from Hoffman Brothers the land involved in this action, under a contract of sale on an installment basis (which contract was not recorded until after the commencement of this suit) ; that in 1924, the contract being paid up, she received from Hoffmans a warranty deed, dated May 10th and recorded May 24, 1924, which deed showed the grantee to be "Clara Intermill, grantee of Butte, County of Silver Bow, State of Montana"; that she paid the taxes on the property from 1910 to 1929; and that her address

as "Butte, Silver Bow County, Montana," appeared upon all the tax records of Salt Lake County; that in January, 1929, one Lulu B. Burrows brought an action in the district court of Salt Lake county against the Hoffmans, Zion's Savings Bank, Mary Bowers, and plaintiff to foreclose a mortgage given by Hoffman Brothers (this mortgage was dated October 3, 1913, and recorded December 8, 1913), "and pretended to serve summons upon this plaintiff by publication in a Salt Lake newspaper," and without any affidavit of jurisdictional facts authorizing such service of summons, the default of defendants Zion's Savings Bank and plaintiff herein was entered (the other defendants appeared by counsel), a judgment of foreclosure was entered May, 1929, and sale of the property had in June, 1929, to said Lulu Burrows, thereby creating a cloud on plaintiff's title; and prays judgment as prayed in her complaint (to quiet title) ; that said cloud upon her title be removed, and the pretended judgment be vacated, set aside, and held for naught, and for her costs.

In reply to this answer, defendant alleged that she obtained title through a series of mesne conveyances from Lulu Burrows; that improvements including a home had been built, costing in excess of $3,000; and there was a mortgage on the property to the First Security Trust Company for $2,200, and prayed judgment on her counterclaim. An, abstract of title up to date July, 1935, was received in evidence. Plaintiff put in evidence her deed and contract of purchase and rested. Defendant offered the decree of foreclosure and the sheriff's deed in evidence and rested. Plaintiff then offered in evidence the affidavit for publication of summons in the foreclosure proceedings, contending that it was insufficient in substance to authorize substituted or constructive service by publication, and also false in fact, for the purpose of showing the decree of foreclosure and sheriff's deed void. The trial court excluded the evidence as a collateral attack upon the judgment in foreclosure, hence the only question on this appeal.

A direct attack on a judicial proceeding is an attempt to correct it, or to void it, in some manner provided by law to accomplish that object. It is an "attack, * * * by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated or declared void." *Pope* v. *Harrison,* 16 Lea, 84 Tenn., 82, 90. If the suit or proceeding is instituted for the very purpose of setting aside, correcting or modifying the judgment, it is usually regarded as a direct attack. When the attack upon the judgment is not incidental to the object of the proceeding, and the end of the proceeding is not something collateral to the judgment, the attack is direct; while a denial of the legal and binding effect of a judgment in a proceeding not instituted for the purpose of annulling or changing it, or of enjoining its execution, is characterized as a collateral attack upon it. *Mosby* v. *Gisborn,* 17 Utah 257, 54 P. 121. A direct attack is an action or motion for the specific and primary purpose of setting aside or annulling the judgment; and any action which has for its purpose the accomplishment of any other relief than the setting aside or modifying of the judgment is not a direct attack. *Wayne* v. *Brumley,* 190 Ky. 488, 227 S. W. 996. When the direct purpose and aim of the proceeding is to attain relief other than the setting aside or modifying of the judgment, and the attack upon the judgment is involved merely incidentally, the attack is collateral. *Cohen* v. *Portland Lodge No. 142, B. P. O. E.,* 152 F. 357, 81 C. C. A. 483; *Cohee* v. *Baer,* 134 Ind. 375, 32 N. E. 920, 39 Am. St. Rep. 270. An apt illustration is found in *Combs* v. *Deaton,* 199 Ky. 477, 251 S. W. 638, where it is held that where the primary relief in a suit is the recovery of land, and the setting aside of a judgment through which defendant claims title is only incidental to that relief, it is a collateral attack. See, also, Van Fleet on Collateral Attack, § 2; 1 Black on Judgments, § 252. A collateral attack is defined by Van Fleet as "an attack on a judicial proceeding in an attempt to avoid, defeat, or evade it, or to deny its force or effect in some

manner not provided by law." Section 3. And the Oregon court in *Morrill* v. *Morrill,* 20 Or. 96, 25 P. 362, at page 364, 11 L. R. A. 155, 23 Am. St. Rep. 95, says: "An attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting, or modifying the decree or enjoining its execution" is a collateral attack. The courts, functioning to determine and settle property rights, upon which persons may rely and the security of society be built, should enjoy, in their formal pronouncements, every possible degree of conclusiveness. To permit their determinations to be lightly regarded or easily evaded would render them nugatory, and be a source of litigation and friction rather than to put an end thereto. That a litigant may obtain relief against an erroneous or improper judgment, the law has provided for him methods by which he may seek relief therefrom, by appeals to the courts rendering it, or by review in an appellate tribunal; or for matters rendering it invalid, which do not appear in the record, or other proper circumstances, he may ask a court of equity to set aside or annul the judgment. If he does not test the soundness of the judgment by the methods law has provided for that purpose, he cannot question or assail the same for errors in the judgment, or the proceeding in which it was entered when in another proceeding it is pleaded or produced in evidence against him. A judgment, once entered by a court of competent jurisdiction, having the res and the parties duly brought before it as provided by law, imports verity, proves itself, and is invulnerable to attacks by any indirect assaults. It can only be questioned in the manner and the proceedings established by law. And since a judgment is established and proved by the record thereof, unless an inspection of that record establishes its invalidity, shows it to be void, the judgment is conclusive and may not be questioned collaterally by any matters dehors the record thereof. *Amy* v. *Amy,* 12 Utah 278, 42 P. 1121, 1124; *Hoagland* v. *Hoagland,* 19 Utah 103, 57 P. 20; *Liebhart* v. *Lawrence,* 40 Utah 243, 120 P. 215.

Courts have announced various rules, tests, and gauges in determining whether a particular attack on a judgment is direct or collateral. We note some of them:

(1) If the course taken to attack the decree is one provided by law, that is, follows a method prescribed by law to annul or void the decree, the attack is said to be direct; otherwise, it is said to be collateral. *Galpin* v. *Page,* 18 Wall. 350, 21 L. Ed. 959; *Hanson* v. *Hanson,* 3 Cal. Unrep. 66, 20 P. 736; *Pinnacle Gold Min. Co.* v. *Popst,* 54 Colo. 451, 131 P. 413; *Thompson* v. *McCorkle,* 136 Ind. 484, 34 N. E. 813, 36 N. E. 211, 43 Am. St. Rep. 334; *Gregg* v. *Seawell,* 85 Okl. 88, 204 P. 908.

(2) If the proceeding is for the purpose of setting aside or modifying the judgment, the attack is said to be direct; if the aim of the action is other relief than the vacating of the judgment, the attack is said to be collateral. *Mosby* v. *Gisborn,* 17 Utah 257, 54 P. 121; *Wayne* v. *Brumley,* 190 Ky. 488, 227 S. W. 996; *Ford* v. *Clendenin,* 215 N. Y. 10, 109 N. E. 124, Ann. Cas. 1917A, 658; *Cohee* v. *Baer,* 134 Ind. 375, 32 N. E. 920, 39 Am. St. Rep. 270; *Morrill* v. *Morrill,* 20 Or. 96, 25 P. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95.

(3) If the voidness or invalidity of the judgment appears from the record thereof, the attack may be made collaterally; if based upon matters dehors the record, it must be made directly. *Amy* v. *Amy,* 12 Utah 278, at page 310, 42 P. 1121, 1124; *Hoagland* v. *Hoagland,* 19 Utah 103, 57 P. 20; *Parsons* v. *Weis,* 144 Cal. 410, 77 P. 1007; *Cully* v. *Shirk,* 131 Ind. 76, 30 N. E. 882, 31 Am. St. Rep. 414; *Newcomb's Executors* v. *Newcomb,* 113 Bush (Ky.) 544, 26 Am. Rep. 222.

(4) Remedies pursued in the proceedings wherein the judgment is rendered are direct attacks; otherwise, they are looked upon as collateral. *In re Estate of Davis,* 151 Cal. 318, 86 P. 183, 90 P. 711, 121 Am. St. Rep. 105; *People* v. *Norris,* 144 Cal. 422, 77 P. 998; *Miller* v. *Madigan,* 90 Okl. 17, 215 P. 742.

(5) Allegations in the pleadings may be examined to determine the nature and purpose of the attack. *Welch* v. *Capital Paper Co.,* 76 Ind. App. 416, 132 N. E. 313; *Borders* v. *Highsmith,* Tex. Civ. App., 252 S. W. 270.

(6) The parties to the proceeding may be important, because in direct attack, the parties to the judgment who would be affected thereby must be made parties, as their rights under the judgment are directly involved. *Borders* v. *Highsmith,* supra; *Dunn* v. *Taylor,* 42 Tex. Civ. App. 241, 94 S. W. 347; *Smith* v. *Perkins,* 81 Tex. 152, 16 S. W. 805, 26 Am. St. Rep. 794; 1 Freeman on Judgments, (5th Ed.) § 308.

(7) An action in equity, brought to annul the judgment or set aside or vacate the same, alleging proper equitable grounds therefor, whether by plaintiff in his complaint, or by cross-complaint or counterclaim by defendant in a proper proceeding, is a direct attack on the judgment. *Liebhart* v. *Lawrence,* 40 Utah 243, 120 P. 215; *Riddle* v. *Quinn,* 32 Utah 341, 90 P. 893; *Wilson* v. *Hawthorne,* 14 Colo. 530, 24 P. 548, 20 Am. St. Rep. 290; *Levin* v. *Gladstein,* 142 N. C. 482, 55 S. E. 371, 32 L. R. A., N. S., 905 note, 115 Am. St. Rep. 747; *Hallack* v. *Loft,* 19 Colo. 74, 34 P. 568; *Follette* v. *Pacific Light & Power Corporation,* 189 Cal. 193, 208 P. 295, 23 A. L. R. 965; *Acton* v. *Lamberson,* 102 Or. 472, 202 P. 421, 732; *Northwestern & Pacific Hypotheek Bank* v. *Ridpath,* 29 Wash. 687, 70 P. 139.

From an examination of the cases, there appears some confusion in the use of the terms "direct attack" and "collateral attack" due to the use of the same terms in different contexts. To differentiate clearly, one must have in mind, not the terms used, but the reason underlying the differentiation. The terms "direct" and "collateral," as used in reference to attacks on judgments, apply to the purpose of, or the method employed in, the attack, and not as descriptive of the assault itself. The term "direct attack" means a proceeding brought, instituted, or maintained directly for the purpose, that is, with the direct and primary

objective, of modifying, setting aside, canceling or vacating, or enjoining the enforcement of the judgment. The term "collateral attack" means the questioning of the validity of a judgment in a collateral proceeding; that is, a proceeding other than the one in which the judgment is entered, and which is not brought, instituted, or maintained for the express purpose of modifying, setting aside, canceling, or enjoining the execution of the judgment. It is a denial of, or questioning the validity of, a judgment, when the judgment is or becomes involved in the cause, only incidentally and collaterally, and its enforcement or validity is not the primary issue in or purpose of the proceeding.

Let us test appellant's contention by these gauges. The statement of facts demonstrates beyond controversy that appellant does not fall within the provisions of gauges (1), (2), (4), (6), and (7), and appellant's argument concedes as much. Under subdivisions (3) and (5), we will examine her pleadings to determine, if possible, the nature of her attack. She commenced the action as the simplest form of suit to quiet title, without any mention of the decree through which defendant deraigns title. Defendant, in like manner, counterclaims to quiet title in her, without pleading the judgment or referring thereto. Plaintiff's reply contains no allegation of facts to show that the court which entered the judgment was without jurisdiction of either the res or the person; no allegations are made as to why the affidavit of jurisdictional facts was insufficient; and no assertions as to why the service of summons by publication was invalid, since she does plead that at the time of the commencement of such suit she was a nonresident of the state. Some basis must be laid in an attack upon a judgment on matters dehors the record, showing that if the allegations so laid are true, the judgment must be void. In this case there is no such allegation. It is evident, therefore, that there are no pleadings making an attack upon the judgment, or to open the way for evidence dehors the record as to its validity.

And if we test appellant's contention by proposition (3), it again appears as a collateral attack. On collateral attack the invalidity of the judgment must appear upon the face of the record. A judgment that is voidable cannot be attacked collaterally. To be so reached it must be void upon the face of the record. Respondent put in evidence the decree in the foreclosure suit and the sheriff's deed as a basis for her title; she did not offer the whole record in the prior suit. There is nothing appearing in the decree or the deed to suggest or indicate even a question as to their validity. The decree recites, "and the default of the defendant, Clara Intermill, having been regularly entered in the premises," which recital we must assume was based upon proper findings of fact and a proper state of the record. Appellant did not offer the balance of the record; the complaint, proof of service of summons, or the findings of fact. She merely offered an affidavit of attorney for plaintiff in the foreclosure proceeding, made as a basis for publication of summons, which was excluded by the court. No further offers of proof were made. As indicated above, there is no pleading that proper service was not had, no pleading even that the affidavit offered was false; and there was no offer of proof on either of these matters. For aught that appears, the record may show personal service, or a voluntary appearance, or a supplemental affidavit, assuming this one to be insufficient, may have appeared in the record. Such matters were not questioned, and the record was not produced to show their absence. We must therefore, assume that the trial court had sufficient evidence of due service of process to vest it with all necessary jurisdiction.

A judgment upon its face, or the judgment roll upon inspection, may show: First, that the court had jurisdiction of the res and the parties; second, that the court did not have jurisdiction of the res or of the parties; or, third, the record may be silent on the question of jurisdiction.

In the first instance, the record supplies all the evidence; in the second instance, the record itself shows the judgment void; and in the third situation, the record importing verity, jurisdiction in the court entering the judgment is presumed, since every court has the initial right and duty to pass upon its own jurisdiction. Any question, therefore, as to jurisdiction or as to the validity of the judgment which does not show upon the face of the record must be raised and brought to the attention of the court by appropriate pleadings. Errors in the judgment, or judgments erroneously entered, where the court had jurisdiction of the res and of the parties, can only be reviewed or corrected by motion in that proceeding or by appeal. In an attack on a judgment the only inquiry, in the absence of proper pleadings raising the issue of its validity, the only question that can be inquired into is: Did the court rendering the judgment have jurisdiction to hear and determine the issue, and to render the particular judgment? If that question is answered in the affirmative, the judgment is conclusive in collateral proceedings unless the record thereof affirmatively shows wherein that jurisdiction failed. 9 Am. & Eng. Encyc. of Law, 256; Black on Judgments, Vol. 1, par. 256.

"In collateral proceedings this question can only be determined by an inspection of the record. If it is silent, then the presumption follows that what ought to have been done was not only done, but rightly done. In a collateral attack, the omission to affirm the jurisdictional fact upon the record will be supplied by the presumption that the court acted with due authority, and its judgment will be as valid as though any fact necessary to jurisdiction affirmatively appeared." *Amy* v. *Amy*, supra; *Hoagland* v. *Hoagland*, supra; *Liebhart* v. *Lawrence*, supra.

It must follow, therefore, that appellant's offer of the affidavit was an attempt to collaterally attack the judgment of foreclosure. The affidavit of jurisdictional facts for publication of summons was not, in 1929, a part of the judgment roll. *Hoagland* v. *Hoagland*, supra; Comp. Laws Utah 1917, § 6867, as amended by Laws 1925, c. 52, and therefore

is probably not even evidence for inspection as part of the record on collateral attack. But assuming that it is part of the record, is competent evidence, the affidavit does not on its face show want of jurisdiction, does not on its face show that the court did not acquire jurisdiction of the person by proper service, and does not show any false or misleading statements. No further proof was offered, and there was no showing that the court's jurisdiction of the person rested upon publication of summons, or that publication of summons rested upon this affidavit. It follows, therefore, that there was no prejudicial error in the court's ruling.

Much has been said in the brief about the want of diligence of counsel for plaintiff in the foreclosure proceedings in trying to locate the defendant Intermill. Had this action been brought in equity, as a direct attack upon the judgment, such matters as well as the contents of the affidavit in question might under proper pleadings become of some consequence, but that is not before us.

As a sidelight upon the question of diligence, appellant testified that in October, 1929, before the sheriff's deed issued, she knew Mrs. Burrows had foreclosed a mortgage on the property against her, and claimed the land in question by virtue thereof, yet she took no proceeding to reopen the case or protect any rights she had until February, 1936. By the provisions of section 6619, Comp. Laws Utah 1917, she had one year after entry of judgment, or until May, 1930, still more than six months in which to apply to the court for leave to be heard on the merits. No such action was taken, no such request was made, and no reason given for the delay or failure. *Blyth & Fargo Co.* v. *Swenson,* 15 Utah 345, 49 P. 1027; *Baer* v. *Higson,* 26 Utah 78, 72 P. 180; *Cutler* v. *Haycock,* 32 Utah 354, 90 P. 897; *Utah Commercial & Savings Bank* v. *Trumbo,* 17 Utah 198, 53 P. 1033.

Finding no reversible error in the record, the judgment is affirmed. Costs to respondent.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

I concur in this opinion but confine my concurrence to the following observations: I think the pleadings of plaintiff were insufficient to permit the introduction of evidence in order to attack the judgment of foreclosure. I also think the plaintiff was guilty of laches in standing by and seeing her property improved when she new the person so improving it thought her title good and when plaintiff knew at the same time that such person's title was dependent on the validity of a foreclosure proceeding which ostensibly foreclosed the plaintiff's interest. But whether if laches is not pleaded or whether at all events it can be pleaded to defeat a party whose property has been taken from him by a judgment if void is a matter I do not need to go into. I think sufficient the reason stated in the prevailing opinion, that the plaintiff did not lay a sufficient ground for the attempted attack on the judgment of foreclosure. I do not care to go outside of that ground in my concurrence.

There have been many confusing statements as to direct and collateral attacks on judgments. We are interested more in the manner of testing in any given case whether a judgment may be attacked than in nomenclature. As says the prevailing opinion, generally, a direct attack is one the purpose of which is to eliminate what is or purports to be a judgment, whereas a collateral attack attempts not to obliterate the judgment, but to avoid the effect of it when used in another suit. But I think there is a form of direct attack which really only avoids the effect of a purported judgment. In order to make this more clear, I list the types of direct attacks as I see them: (1) That attack which attempts to set aside a judgment by a motion or proceeding brought in the same suit in which the judgment was rendered. (2) A separate suit brought and designed directly to set aside a voidable judgment or what is not a judgment but which purports to be one; in other words, a void judgment. (3) Where a party brings a suit or defends a suit

relying for recovery or for a defense on what purports to be a judgment rendered in another suit, the opposing party may show such judgment to be void.

If one brings a suit on a contract, the other party may show the contract invalid. For the same reason, I see no reason why in a suit based on a purported judgment or defended on the strength of a supposed judgment which is null, it may not be avoided in the same suit in which such judgment is to be introduced and used by laying the proper foundation for introducing evidence of the voidness of the supposed judgment. This for the simple reason that in any case opportunity should be permitted under proper procedure to show that what appears to be a judgment is a mere utterance with no judicial effect. But so jealous is the law of its judgments recorded as such, that only such type of direct attack can be made when it is claimed the judgment is void, not when it is only voidable, and only can evidence be introduced of its voidness when the pleadings set up wherein it is void. The one exception is, of course, where the judgment is void on its face. Where its voidness is self-revealed, even if the judgment is introduced incidentally in an action, an attack can be made on it, whether such attack be called direct or collateral. In that it directly opposes its introduction or use as a judgment, it is at least descriptively a direct attack. Objection could be made to its introduction for the reason that it itself shows that what is attempted to be introduced as a judgment is not a judgment. But where its voidness is not self-revealed, the pleadings must set out wherein and why it is void.

I am not attempting to say whether a party could go so far as to introduce the judgment roll in a case in order to show a judgment introduced by the other party void without pleadings on which to base such introduction. At least in this case it was necessary to go outside of the judgment roll by the introduction in evidence of an affidavit of jurisdictional facts claimed to be deficient in order to prove the

judgment void. This could not be done without such pleadings as would be required in an independent action to set the judgment aside.